[Alabama National Bank v. Hunt *et al.*]

# Alabama National Bank *v.* Hunt *et al.*

*Action on a Promissory Note.*

.1. *Sufficiency of judgment on demurrer; minute entry.*—To constitute a sufficient judgment on demurrer there should be a formal entry of the submission on demurrers to specified pleadings, a recital of the consideration thereof by the court, and a formal adjudication, such as "It is therefore considered and adjudged by the court that the demurrers * * * be and they are hereby" overruled or sustained as the case may be; and a recital in what is intended to be the judgment entry that "Thereupon the plaintiff's demurrers numbered 1, 2, etc., to the 3d and 4th pleas are overruled and disallowed," is not sufficient as a judgment of the court upon demurrers, and such ruling of the trial court upon the demurrers will not be reviewed on appeal.

:2. *Action on a promissory note; sufficiency of notice of surety to holder to require institution of suit on note at first succeeding term of court.*—Where, in response to a notice from the holder of a note, requesting payment thereof, one who signed said note wrote a letter to the holder in which he stated that the notice concerning the note of H. (who was shown to be the principal maker) was received, and then stated that under the circumstances he would resist his liability on the note, and that the letter was to notify said holder that he must take all needful legal steps to fasten on the writer any liability, and that the holder must sue said H. as the law requires and sue at once, is a sufficient notice under section 3884 of the Code of 1896, to discharge the writer thereof from liability as surety on the note, if the holder failed to bring suit upon the same to the first term of the proper court after the receipt of said letter.

:3. *Same; same; case at bar.*—In an action brought by the holder of a negotiable promissory note, against three persons who signed said note, one of the defendants, by special pleas set up that he was surety on the note and had requested the plaintiff, by written notice, to sue the principal maker at the next term of the court upon said note, and that the plaintiff had failed to do so. The evidence showed that in response to the request from the plaintiff of said defendant to pay said note, he

wrote the plaintiff the following letter: "Your notice concerning the note of George C. Hunt to hand. Under the circumstances of the case, I shall resist my liability on the note. This is to notify you that you must take all needful legal steps to fasten on me any liability. You must sue Mr. Hunt as the law requires and sue at once." It was shown that suit was not instituted at the first term of the court to which it could have been brought, after the reception of said letter. *Held*: That said letter was sufficient under section 3884 of the Code to discharge said defendant from liability as surety upon the note in suit, by reason of the fact that the plaintiff failed to bring suit upon the same at the first term of the proper court after the receipt of said letter.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This suit was instituted on October 13, 1896, by the Alabama National Bank against George C. Hunt, John B. Tally and William Richardson; and counted upon a promissory note for five hundred dollars, which was signed by the defendants and dated January 20, 1896, and payable on May 1st, 1896, to the order of Joseph F. Johnston, which note was alleged in the complaint to belong to the plaintiff. This note was made payable at the Alabama National Bank, at Birmingham, Alabama.

The defendant, William Richardson, pleaded the general issue and ten special pleas, in which he set up that he was not a co-maker on the note, but a mere surety thereon; that the defendant, Hunt, was the principal debtor, and that on May 30, 1896, the defendant, Richardson, by notice in writing, requested the bank to bring suit against said Hunt at the next term of the court, and that by reason of the failure of the bank to bring suit against Hunt at the August term, 1896, of the circuit court of Madison county, Richardson was discharged as surety, under the provisions of section 3884 of the Code of 1896. There were demurrers interposed to these special pleas. The rulings upon these demurrers, as set forth in the judgment entry, are copied in the opinion. Thereupon the plaintiff filed several replications, in which it set up that the note sued upon was commercial paper and that it acquired said note in due course of business before maturity, in a *bona fide* trans-

33

action for a valuable consideration, and without notice that Richardson was or claimed to be a surety on said note. Demurrers were interposed by the defendant, Richardson, to these replications. The ruling upon the demurrers to the replications, as set forth in the judgment entry, was as follows: "The defendant offers demurrers numbered 1, 2, 3, 4, 5 and 6 to the plaintiff's replications numbered 2, 3, 4 and 5, which demurrers to said replications are by the court sustained." The judgment entry then recites: "And thereupon issue being joined on the 1st, 2d, 5th, 7th, 8th, 9th and 10th pleas of defendant, and a struck jury being demanded and granted, thereupon comes a jury," etc.

The plaintiff offered in evidence the note sued on. This note was for $500, dated January 20th, 1896, and recited: "On the 1st day of May, 1896, we promise to pay to the order of Joseph F. Johnston the sum of five hundred dollars, at the Alabama National Bank, Birmingham, Alabama." It contained a waiver of the right to claim exemptions, a promise to pay reasonable attorney's fees for collection and a waiver of demand, purchase and dishonor. It was signed by George C. Hunt, John B. Tally and William Richardson. It was indorsed "Jos. F. Johnston."

William Richardson, the defendant, testified, against the objection of the plaintiff, that he was only a surety on the said note; that there was no consideration moving to him for his execution of the note, and that he signed it as an accommodation to the said George C. Hunt, who was the principal debtor. The other evidence for the defendant showed that Hunt was the principal maker of the note, and that the defedants, Richardson and Tally, signed the same as his sureties. The letter from the defendant, William Richardson, to the Alabama National Bank, dated May 30, 1896, requiring the institution of suit on said note is copied in the opinion.

It was shown by the plaintiff that it acquired the note in due course of business before its maturity.

Jos. F. Johnston, as a witness for the plaintiff, testified that the bank had no notice or knowledge that Richardson was surety on the note; that he, Johnston, never

told any of its officers that he was a surety; that on April 30, 1896, he sold the note to the plaintiff for $499, and indorsed it. There was other evidence introduced by the plaintiff tending to show that they did not know that Richardson was surety on the note, and that it had acquired the note in due course of business for a valuable consideration before maturity.

Upon the introduction of all the evidence, the plaintiff requested the court to give the jury the following, among other written charges: (1.) "If the jury believe the evidence they must find a verdict for the plaintiff." (2.) "Unless the jury are satisfied from the evidence that Judge Richardson required the bank by notice in writing, to bring suit on said note to the August term, 1896, the plaintiff is entitled to recover." (3.) "There is no evidence in this case that the bank knew, when the note was discounted by it, or when it received Richardson's letter of May 30th, that said note signed by Hunt, Richardson and Tally, was given for the identical $500 which the bank had formerly paid to Hunt on Johnston's check." (13.) "Section 3884 of the Code has no influence upon this case under the evidence, and unless you believe from the evidence the defendant has suffered some damage by the failure of the plaintiff to bring suit at the August term, 1896, the plaintiff is entitled to a verdict."

The court refused to give each of these charges requested by the plaintiff, and to the refusal to give each of them the plaintiff separately excepted. The plaintiff also separately excepted to the court's, giving, at the request of the defendant, Richardson, the following written charges: (1.) "If the jury believe from the evidence that the bank had notice that Richardson was a surety, and after being notified to bring suit, failed or refused to bring suit at the August term of the circuit court of Madison county, 1896, then Richardson is not liable, and your verdict must be for the defendant, Richardson." (2.) "If the jury find from the evidence that the defendant, Richardson, was merely a surety on the note sued on, and that when the plaintiff bank received the written notice from the defendant, Richardson,

dated May 30, 1896, it had notice that defendant, Richardson, was merely such surety, and that plaintiff did not bring suit on such note to the first term to which such suit could have been brought, then the jury should find in favor of the defendant, Richardson." (3.) "If the jury believe from the evidence that the bank had notice that Richardson was a surety at the time the note was executed, then your verdict must be for the defendant, Richardson." (4.) "It is for the jury to ascertain from the evidence whether the plaintiff was informed when the notice from defendant, Richardson, dated May 30, 1896, was received, that the defendant, Richardson, was merely a surety on the note sued on."

There were verdict and judgment in favor of the plaintiff against the defendants, George C. Hunt and J. B. Tally, and there were verdict and judgment in favor of the defendant, Richardson. The plaintiff appeals, and assigns as error the several rulings of the court to which exceptions were reserved.

JOHN W. TOMLINSON and HUMES & SPEAKE, for appellant.—Section 3884 of the Code of 1896 has no application to the facts of this case. That statute is intended to apply to cases where the person claiming its benefit is a surety "upon the contract"—a surety *upon the face of the paper itself*—where the contract itself, if in writing, shows the suretyship. A careful reading of the statute itself leads to this conclusion. It was not the intention of the lawmakers that a person who, *on the face of the contract,* is a co-maker or principal can, after the note has been negotiated and has matured, give notice that the contract does not speak the truth; that he is not a principal, but a surety. It is evident that by the statute the writing is, in and of itself, the sole expositor of the relation of the signers *inter sese* and to the creditor or person having the beneficial interest. The creditor is not required to look away from the paper itself and take notice of the fact (contrary to the paper itself) that one of the signers claims to be a surety. If he is not a surety on the paper itself—"upon the contract"—he is not authorized to give the notice and the

creditor is not required to heed it when given. That the courts, in determining the status and rights of the parties to the instrument under this statute, look to the *face of the instrument alone* to find out who are the sureties, is shown by the decision of the Supreme Court of the United States in the case of *Ross v. Jones,* 22 Wallace, 596.

It is submitted further that if the statute can apply in such a case as this, the notice in writing given by the apparent co-maker must be given *as a surety,* and must specifically and definitely notify the holder of the instrument that the person is a surety, and must, *as a surety, require suit to be brought against the principal.* The letter written by Richardson, dated May 30, 1896, was not sufficient to give such notice. Not a word is said in this letter to show that Richardson was surety and Hunt the principal debtor. The notice is not as definite or certain as that which was given in the case of *Shehan v. Hampton,* 8 Ala. 942. The notice must give notice *"of the suretyship."*—*Pickens v. Yarbrough,* 26 Ala. 417; *Hightower v. Ogletree,* 114 Ala. 94; *Woolenshlare v. Searles,* 45 Pa. St. 45; *Bank v. Gibson,* 1 Watts (Pa.), 143; 3 Pa. St. 264; 24 Am. & Eng. Encyc. of Law, 805.

A negotiable instrument which is a valid debt in the hands of the original holder, may be bought or sold as any other chattel, at its real or supposed value; and the transfer of such instrument, at a discount greater than the legal rate of interest, is not usurious, although the holder may indorse it, unless the transaction is a mere device to avoid the statute against usury.—*Capital City Ins. Co. v. Quinn,* 73 Ala. 558; *Wildsmith v. Tracy,* 80 Ala. 258; Tiedeman on Com. Paper, §§ 292-3.

R. W. WALKER, *contra.*—It is clearly shown in the evidence that the defendant requested the creditor by notice in writing to bring suit against the principal debtor as noted by § 3884 of the Code of 1886; and that notwithstanding the notice such suit was not brought the first term of court to which suit could have been brought as required by statute.—*Howell v. Edwards,* 113 Ala. 137. The notice served upon the plaintiff in this

suit was sufficient. It is said in Brandt on Suretyship, § 504: "A statute which has been very generally enacted places it in the power of the surety, by a notice in writing' to require the creditor to put the claim in suit; it is well settled that the notice in such case, must, in order to avail the surety, be a positive demand to bring suit." This is the construction that has been given out statute. *Savage, Admr. v. Carlton,* 33 Ala. 443; 2 Brickell's Dig., 378, §§ 197-212; *Shehan v. Hampton,* 8 Ala. 942-46; *Kennedy v. Falde et al.,* 29 N. W. Rep. 667; *Hambrick v. Barnett,* 27 N. E. Rep. 106.

It is well settled in this court that one acquiring commercial paper on usurious consideration cannot be a *bona fide* holder.—*Hart v. Alder,* 109 Ala. 467. The plaintiff discounted the note in suit the day before it was due at a rate of interest amounting to 72 per cent., not counting the days of grace, or at a rate of about 18 per cent. if the days of grace are counted. This was, under the National Bank law, usurious.—16 Am. & Eng. Encyc. of Law, 174; *Farmers & Merchants Nat. Bank v. Dearing,* 91 U. S. 29.

HARALSON, J.—In this cause one of the defendants filed a number of special pleas, to which demurrers were interposed. Upon these demurrers what purports to be the judgment entry contains the following recital: "Thereupon plaintiff's demurrers numbered 1, 2, 3, 4, 5, 6, 7, 8 and 9 to the 3rd and 4th pleas are overruled and disallowed. All demurrers to 5th, 7th, 8th, 9th and 10th pleas are overruled and disallowed."

It has been repeatedly held by this court that unless a party secures a ruling on a demurrer, it will be presumed on appeal that the demurrer was withdrawn or abandoned.—*Ala. Mid. Railway Co. v. McDonald,* 112 Ala. 216; *American Mortgage Co. v. Inzer,* 98 Ala. 608; *Elyton Land Co. v. Morgan,* 88 Ala. 434. If the judgment entry is insufficient to show a ruling on the demurrers they must now be treated as waived. In *Jasper Mercantile Co. v. O'Rear,* 112 Ala. 247, the following language was used: "We may remark, however, that the mere copying into what purports or was intended to be

a judgment entry, of memoranda made on the docket by the judge, such as, 'plaintiff's demurrer to 4th, 5th and 6th pleas overruled and demurrer to other pleas sustained,' is not sufficient as a judgment upon the demurrers. There should in all cases be a formal submission on demurrers to specified pleadings, a recital of consideration thereof by the court and a formal adjudication, such as, 'It is therefore considered and adjudged by the court that the demurrers be and they are hereby overruled,' or sustaned, as the case may be."

The recital here seems to be nothing more or less than a copy of the memoranda made by the judge upon the docket, with the exception of the word "thereupon," which of itself can have no effect. There was no formal entry of submission on demurrers to specified pleadings. The judgment entry contains no recital of consideration by the court, nor any formal adjudication. A judgment to be valid must be complete in itself; it must appear to be the act, the adjudication of the court, and not a mere memoranda of its acts.—*Bell v. Otts,* 101 Ala. 186; *McDonald v. Ala. M. R. R. Co.,* 123 Ala. 227.

It follows that what purports to be a judgment upon the demurrers is entirely insufficient and they must be treated as waived.

The plaintiff also filed replications to defendant's pleas and the defendant demurred thereto, which demurrers purport to be sustained. But the judgment entry shows the same looseness and informality as it does with reference to the demurrers to the pleas. In this aspect of the cause, it should properly have been tried upon the pleas and the replications thereto, in which event appellant would have had the benefit of the material question raised by its demurrers, and the cause tried on joinder of issue on the replications, were it not for the fact that the judgment entry recites that issue was joined upon certain specified pleas, leaving out the replications altogether. The cause as thus presented contains but a single question, since the parties have so made the issue, and that question is, whether or not the letter of defendant, Richardson, to appellant was sufficient under secton 3884 of the Code to discharge him

from liability as a surety upon the note in suit by reason of the fact that appellant failed to bring suit upon the same at the first term of the proper court after the receipt of said letter. That letter is as follows:

"Huntsville, Ala., May 30th, 1896.

"The Alabama National Bank,

"Birmingham, Ala.

"Gentlemen:

"Your notice concerning the note of George C. Hunt to hand. Under the circumstances of the case I shall resist my liability on the note. This is to notify you that you must take all needful legal steps to fasten on me any liability. You must sue Mr. Hunt as the law requires, and sue at once. Yours truly,

(Signed) William Richardson."

So far as the proof discloses, the appellant bank had no notice that Richardson bore the relation of surety to Hunt, upon the note in suit, unless the above letter disclosed it. The appellant had the right to presume that he was a joint-maker, since it so appeared upon the face of the note, at least until the contrary was brought home to it.—*Johnson v. King*, 20 Ala. 270; *Summerhill v. Tapp*, 52 Ala. 227.

It is true, this letter does not state in so many words that Richardson was the surety on the note sued on. It does refer to the note, however, as that "of George C. Hunt." This very reasonably gives the information that the note is not Ricardson's, in the sense that he was in fact the principal obligor therein, but that Hunt was; and it would seem the bank no longer had any reasonable doubt on that subject, after the receipt of this letter. The next sentence in the letter: "Under the circumstances of the case I shall resist my liability on the note," cannot be construed to mean that he intended to resist his liability at all events, for something already done and past, without reference at all, to their bringing suit on the note at the next term of court in order to hold him liable thereon; and the succeeding sentence in the letter, "This is to notify you that you must take all needful legal steps to fasten on me any liability," was a fair

warning to sue in the manner directed by statute to hold him. But not to be indefinite about that, he added: "You must sue Mr. Hunt as the law requires and sue at once." This last expression conveyed also very clearly to the mind of the bank that Hunt was the principal debtor and Richardson was the surety. There was no law which made such a notice necessary, if they were in fact joint principals, or Hunt was not the principal. The demand to sue "as the law requires, and sue at once," could, with all reasonable certainty, be construed as meaning nothing else but that the relation of principal and surety existed between the parties and that the bank must sue to the first court to which the suit could be brought after the receipt of such notice. It conveys the idea that he was asserting a right to have suit brought on the note; otherwise, it was without rational meaning. It has been held that such a notice "ought to be so clear and distinct that its meaning will strike the mind of the hearer at once and without argument.—*Wollesshlare v. Searles,* 45 Pa. St. 45. This case, possibly, puts the requirement of the distinctness of the notice too strongly and technically. It has been held elsewhere, and it would seem on better principle, that a substantial compliance will satisfy the requirements of the statute, and that a notice which is positive in its demand to sue, and does not mislead the creditor as to the instrument to be sued on, is sufficient.—*Meriden Plate Co. v. Flory,* 44 Ohio St. 430; *Routon v. Lacey,* 17 Mo. 399; Brandt on Suretyship, § 605.

We have been referred to the case of *Shehan v. Hampton,* 8 Ala. 942, as holding in substance that the notice in this case was insufficient. The notice to the executors there was, "to collect all monies due the estate of Joel Chandler, deceased, for which I stand as surety,　*　* * or I shall no longer stand as surety." There the particular note or obligation of the surety was not mentioned, nor was the creditor required to sue. The court said: "Conceding that the notice in other respects may be general, or at least with regard to the sum, date and description of the instrument by which the surety is bound, yet, in this instance, the notice or writing gives

no intimation to the creditor that he is required to proceed by suit upon any note in which Joel Chandler is principal." Properly construed, therefore, it will appear that this case is not in conflict with the views we have expressed above as to the sufficiency of this notice. We deem it sufficient, and the proof is clear, and without conflict, that the suit was not brought to the first term of the court thereafter to which it might have been brought.

It would seem that sections 3884, 3885 of the Code of 1896, include "any contract for the payment of money," except "bonds or other contracts with collateral conditions," or "bonds of executors, administrators, guardians, or public officers;" that commercial paper is not excepted from its operation, and that the question of the *bona fide* ownership of such paper, acquired for value in the usual course of trade before maturity without notice of defenses does not arise.

We find no error in the record and the judgment of the lower court must be affirmed.

Affirmed.