# Tallassee Falls Manufacturing Co., for use, &c., v. Western Railway of Alabama.

*Action against Common Carrier for Loss of Property.*

1. *Pleading and practice; sufficiency of judgment on demurrers.*
   To constitute a sufficient judgment on demurrers, there should be a formal entry of the submission on demurrer to specified pleadings, a recital of the consideration thereof by the court, and a formal adjudication, such as "It is, therefore, considered and adjudged by the court that the demurrers * * * be and are hereby" overruled or sustained, as the case may be; and the copying into the judgment entry what is a mere memoranda on the docket of the judge, such as "plaintiff's demurrer to......pleas are overruled," or "defendant's demurrers to plaintiff's......repli-

[Tallassee Falls Mfg. Co., for use, etc. v. Western Ry. of Alabama.]

cation are sustained," etc., is not sufficient as a judgment of the court upon demurrers.

2. *Common carrier; liability as limited by special contract.*—Notwithstanding a provision in a bill of lading that the liability of a railroad company as a common carrier terminates immediately upon the arrival of the goods shipped at the place of their destination and that said company will thereafter be responsible only as a warehouseman, the responsibility of such company as a common carrier continues after their arrival until a reasonable time and opportunity have been allowed the consignee for removing the goods.

3. *Same; same; contract of shipment can not be varied by proof of local custom.*—While the stipulation in a bill of lading that the contract of shipment is executed and the company's liability as a common carrier terminates immediately upon the arrival of the goods at the place of their destination must be construed as an agreement that responsibility as a common carrier shall cease upon the arrival of the goods after a reasonable time and opportunity have been allowed the consignee to remove them, such stipulation in the contract can not be further changed by the proof of a local custom or particular usage; and in an action against the carrier upon such bill of lading, to recover for the loss of the goods, it is not competent for the plaintiff to introduce evidence of a local custom which allowed longer than a reasonable time for the removal of goods after their arrival at the particular place in question

4. *Liability of common carrier; reasonable time for removal of goods.*—What is a reasonable time for the removal of the goods from the railroad depot, is a question of law for the court, when the facts are undisputed; and in its determination, the convenience or necessities of the consignee, the proximity or remoteness of his residence or place of business from the depot, can not be considered.

5. *Same; same; case at bar.*—The computation of what is a reasonable time within which to remove goods begins from the time when the goods arrive at the place of destination and are ready for delivery in the manner usually adopted by the parties; and where cotton is shipped in large quantities and upon its arrival the consignee is notified thereof and he pays the charges and the cotton is delivered to the consignee in the usual manner, and he allows a part of it to remain in the custody of the carrier for six days, and it is destroyed by fire, the carrier is not liable as a common carrier because more than a reasonable time for the removal of the cotton destroyed had elapsed after its arrival.

[Tallassee Falls Mfg. Co., for use, etc. v. Western Ry. of Alabama.]

6. *Same; recovery can not be had on proof of warehouseman's liability.*—In an action against a railroad company as a common carrier for the loss of goods, where the complaint counts upon a bill of lading in substantially the Code form, a recovery can not be had on proof of loss which occurred after the defendant's duty and liability as common carrier has terminated, and while the goods were in its custody as a warehouseman.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. J. C. RICHARDSON.

This suit was brought by the Tallassee Falls Manufacturing Company for the use of fire insurance companies, against the Western Railway of Alabama.

The first count of the complaint, which was the one upon which the trial was had, claimed damages for the failure to deliver certain cotton, which the defendant received at Montgomery as a common carrier and agreed, for a reward, to deliver it to Cowles station, and is in substantially the Code form. This count was subsequently amended by adding thereto the allegation that the money sued for, when collected, would be the property of the insurance companies for whose use the suit was brought, and who, prior to the bringing of the suit, had paid plaintiff for said loss, and that thereby the insurance companies had been subrogated to the rights of the plaintiff against the defendant.

There were many pleas interposed by the defendant, demurrers to which were overruled. The plaintiff filed several replications, demurrers to which were sustained. Under the opinion on the present appeal it is unnecessary to set out these rulings upon the pleadings, inasmuch as they are not presented for review.

The judgment entry, in reference to the rulings upon the pleadings, was as follows: "Thereupon defendant by counsel demurs to the amended complaint. Being argued by counsel and understood by the court said demurrer be and is hereby overruled. Plaintiff by counsel moves to strike out pleas 2 and 7. Being argued and understood by the court is sustained and defendant excepts. Demurrer to pleas 3, 4, 5, 6 and 9 said demurrer is overruled and demurrer to replications to 4th plea sustained by the court, and demurrer

[Tallassee Falls Mfg. Co., for use, etc. v. Western Ry. of Alabama.]

to replication to 3d plea sustained by the court, and demurrer to replication to 5th plea court sustains, and demurrer to replication of 6th plea is sustained by the court. Motion to strike replication to pleas 3, 4, 5 and 6 being argued by counsel and understood by the court, said motion is overruled. Thereupon plaintiff by counsel is allowed by the court to plead over. Which is done. Demurrer to replication 2 to plea 3 filed June 8, 1899. Court sustains said demurred. Demurrer to replication 2 filed June 8, 1899, to plea 4, sustained by the court. Demurrer to replication 2 filed June 8, 1899, to plea 5 sustained by the court. Demurrer to replication 2 filed June 8, 1899, to plea 6, the court sustains, and plaintiff by counsel is allowed by the court to plead over, which is done. Demurrer to amended replication 2 filed June 8, 1899, to 3d plea being argued by counsel and understood by the court is sustained." The material facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The plaintiff offered to introduce evidence to prove the existence of a local custom or particular usage which existed between the defendant and the plaintiff having regard to the removal of cotton at Cowles station, and under which the plaintiff was allowed as long a time as was necessary to remove cotton shipped to Cowles station. The court sustained defendant's objection to such evidence, and to this ruling plaintiff duly excepted.

Upon the introduction of all the evidence the court at the request of the defendant gave the general affirmative chage in its behalf, to the giving of which charge the plaintiff duly excepted.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trail court to which exceptions were reserved.

WATTS, TROY & CAFFEY, for appellant.—The custom and usual course of dealings between plaintiff and the

defendant for twenty years prior to the shipment of the cotton involved in this suit enters into and becomes a part of the contract of such shipment.—*Melbourne & Troy v. L. & N. R. R. Co.*, 88 Ala. 447; *C. & W. R. R. Co. v. Ludden*, 89 Ala. 617; Hutchinson on Carriers, §§ 40, 336; Story on Bailments, § 543; *M. & E. R. Co. v. Kolb*, 73 Ala. 396; *Jurey v. M. & M. R. Co.*, 111 U. S. 584.

The railroad company held the cotton as common carrier at the time of its destruction by fire.—*L. & N. R. R. Co. v. Oden*, 80 Ala. 41; *Kidd v. Ala. & Tenn. R. Co.*, 35 Ala. 209; *West R. of Ala. v. Little*, 86 Ala. 162; *C. & W. R. R. Co. v. Ludden*, 89 Ala. 614.

Upon the payment by the insurance companies of the loss which the Tallassee Falls Manufacturing Company suffered in the loss of this cotton they became subrogated to all the rights of said manufacturing company and could prosecute a suit in the name of said manufacturing company for their use.—*Phenix Ins. Co. v. E. & W. T. Co.*, 117 U. S. 312;*Hall v. Nashville & C. R. R. Co.*, 13 Wall. 367; *Mobile & Montgomery Ry. Co. v. Jurey*, 111 U. S. 584;*Oliver v. Memphis Ins. Co.*, 19 How. (U. S.) 312; *McCord v. Love*, 3 Ala. 107; 15 Ency. P. & P., 543; *Fretz v. Bull*, 12 How. (U. S.) 466; *Hall v. L. & N. R. R. Co.*, 13 Wall. 367.

GEORGE P. HARRISON, *contra*.—The judgment on the demurrers as set forth in the judgment entry was not sufficient to authorize a review of the rulings thereon upon this appeal.—*Jasper Mer. Co. v. O'Rear*, 112 Ala. 247.

If the consignee of goods fails to remove them in a reasonable time after notice of their arrival, the liability of the railroad company as a common carrier ceases, and it becomes liable thenceforward only as a warehouseman. Liability as a common carrier and as a warehouseman can not exist at the same time; so long as it continues liable as a common carrier its duties as a warehouseman do not begin, and as soon as it becomes liable as a warehouseman it ceases to be a common carrier.—*A. & A. R. R. Co. v. Ledbetter*,

[Tallassee Falls Mfg. Co., for use, etc. v. Western Ry. of Alabama.]

92 Ala. 326; *L. & N. R. R. Co. v. Oden,* 80 Ala. 38; *Collins v. A. G. S. R. R. Co.,* 104 Ala. 390; *N. A. & S. R. R. Co. v. Campbell,* 12 Ind. 55; 2 Rapalje & Mack's Digest of Railway Law, § 362; 9 Am. & Eng. R. R. Cases, 106; *Chalk v. C. C. & A. R. R. Co.,* 85 N. C. 423.

The affirmative charge in favor of the defendant was properly given because of the misjoinder of plaintiff's in this suit.—17 Am. & Eng. Ency. of Law, 561; *Barnham v. Hostetter,* 67 Cal. 272.

SHARPE, J.—The recitals found in this record relating to demurrers to pleadings are not such as show or constitute a judgment either sustaining or overrulings either of the demurrers; and under the rule established by several decisions of this court upon the effect of such recitals the appellant can take nothing by assignments of error based upon them.—*Jasper Mer. Co. v. O'Rear,* 112 Ala. 247; *McKissick v. Witz,* 120 Ala. 412; *Bessemer L. & I. Co. v. DuBose,* 125 Ala. 442; *Hereford v. Combs,* 126 Ala. 369.

The issue joined upon the somewhat meagre 9th plea presents substantially the merits of the case. The complaint declares alone upon the contract of carriage. The 9th plea sets up "that the cotton sued for in said complaint was destroyed by fire after the defendant's duty and liability as a common carrier had terminated and while the goods had been left in its custody as warehouseman." To this there was no special replication.

The uncontradicted evidence shows that 437 bales of cotton were on the 9th of October, 1895, delivered to defendant, for shipment to plaintiff, at Cowles station, that they all reached that station not later than the 12th of that month, that plaintiff received notice of arrival and paid at least a part of the freight not later than the 12th and from that time it proceeded to haul the cotton in wagons to its factory six miles distant. The platform had capacity for only about 100 bales. After arrival at the station the cotton was allowed to remain in cars from which they were by defendant un-

loaded upon the platform so as to keep it filled with bales as others were hauled from it. Unloading and hauling continued until about one o'clock on the 18th of that month when 103 bales on the platform and 25 bales in a car were destroyed by fire.

The bills of lading under which the cotton was shipped provide that "the goods shall be received by the owner or consignee at the station or wharf of the carrier at the ultimate point of delivery, and if not taken away immediately on their being landed or discharged may, at the option of the delivering carrier, be sent to a warehouse or be permitted to lie where landed; in either event at the expense of the shipper, owner or consignee. * * * This contract is executed and accomplished and the liability of the company as common carriers thereunder terminates on the arrival of the goods or property at the wharf, station or depot to which this bill of lading contracts to deliver and the carrier will be responsible thereafter only as warehouseman."

By its terms the bill of lading is made the contract of shipment and except so far as it may be modified by the law itself the parties are bound by them. The provision for terminating the carrier's liability immediately on arrival is subject to the requirement which the law from public policy injects into the agreement, which continues the responsibility of a common carrier until a reasonable time and opportunity has been allowed the consignee for receiving the goods.—*L. & N. R. R. Co. v. Oden*, 80 Ala. 38; 6 Am. & Eng. Ency. Law (2d ed.), 263, and cases there cited. The stipulation for ending liability is thus modified but is not abrogated by the law. It must be read as an agreement to end responsibility of the defendant as a common carrier after the lapse of such reasonable time; and so read it may not be changed by proof of local custom or of particular usages, and plaintiff's offer to show a custom to allow it a longer time for removing freight was properly rejected. Proof of custom, though proper to be resorted to in some cases, is never admissible to vary or control a written contract which on its face is free

from ambiguity and there are no circumstances to create doubt of the proper application of terms used in the writing. Parties by express stipulations may always exclude any inference that they intend to adopt a custom or usage into their contracts.—*Barlow v. Lambert*, 28 Ala. 704; *Cox v. Peterson*, 30 Ala. 608; *Smith v. Mobile, etc., Ins. Co.*, 30 Ala. 167.

The question of what is a reasonable time for receiving from the carrier is often one of mixed law and fact, but when the facts are certain and undisputed the court and not the jury should determine it.—*Collins v. A. G. S. R. R. Co.*, 104 Ala. 390; *Col. & W. Ry. Co. v. Ludden & Bates*, 89 Ala. 612; *Ala. & Tenn. Rivers Co. Kidd*, 35 Ala. 209; Hutchinson on Carriers, § 350. Computation of that time begins when the goods are at the place for delivery and ready for delivery in the manner usual or adopted by the parties. There can be no inference from the facts in evidence that the cotton was not ready for delivery from the time of its arrival at the station or that it was left on the cars during the six days thereafter to suit the defendant's purposes or for any other reason than the plaintiff did not employ means to remove it more speedily. The time it was so allowed to remain unloaded is not chargeable to the defendant as continuing its responsibility other than a warehouseman.—*Gregg v. Ill. Cent. R. R. Co.*, 147 Ill. 550; *Whitney Mfg. Co. v. Railroad Co.*, 38 S. C. 365; 37 Am. St. Rep. 767; *Chalk v. Charlotte R. R. Co.*, 85 N. C. 423; 9 Am. & Eng. R. R. Cases, 106.

In *Collins v. A. G. S. R. Co., supra*, it was held as matter of law that six days was more than a reasonable time for receiving from the carrier, and in *Col. & W. R'y Co. v. Ludden & Bates, supra*, it was held as a legal conclusion that three days was more than a reasonable time for receiving freight which in that case consisted of a piano.

We hold that the ninth plea was sustained by the facts, and that the defendant was therefore entitled to the general affirmative charge given in its favor. In the rulings on evidence there is no error prejudicial to the appellants.

The judgment will be affirmed.